JUDGE KATHLEEN CARDONE   FILED

United States District Court

2023 OCT 26  PM 4: 46

for the

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                      DEPUTY

Western District of Texas El Paso

Joseph P. Smith

_____

*Plaintiff*                                    Civil Action number

V.

Merrick B. Garland et al.          **EP23 CV0395**

_____

*Defendant*

## BACKGROUND/INITIAL PLEADING

1 The Plaintiff is a retired Senior Inspector with the Investigative Operations Division (IOD) of the US Marshal's Service (USMS)(The Agency). The Investigative Operations Division of the USMS was a Headquarters branch of the Agency with several special investigative functions and several Senior Inspectors assigned in the Washington D.C. area and remotely to other domestic and international offices. The members of the Investigative Operations Division functioned outside the USMS District chain of command and reported directly through their own headquarters management. During most of the time that the Plaintiff was a member of the Investigative Operations Division, Senior Inspectors were supervisory graded personnel. Senior Inspectors performed special functions within the Agency depending on their particular assignment. Senior Inspectors were sometimes assigned to work individually in remote offices and/or as representatives to other Agencies, working groups, or sometimes foreign governments. The Plaintiff was a member of the International Investigations Bureau from approximately 2011 to 2015 and was assigned in the functional capacity of an assistant country attache under the Mexico City foreign field office assigned to the US Consulate in Juarez Mexico. From 2015 to the date of his retirement on January 7th 2023 the Plaintiff was assigned as a Senior Inspector and sole IOD representative to the

1

Organized Crime Drug Enforcement Task Force (OCDETF) in El Paso Texas. Until 2016 the Plaintiff was the sole USMS represetative to the OCDETF task force. The Plaintiff's role involved among other things aiding other member Agencies in investigations of high level fugitives, particularly those believed to be present in the Republic of Mexico, providing liason to various international entities, providing a conduit to other USMS technical investigative services and serving as the voting presence for the USMS at various Agency stakeholder meetings.

2. During 2016 the Plaintiff was assigned a Deputy US Marshal from the El Paso Texas field office; Michael Sharboneau. The Plaintiff functioned as a detail supervisor to Sharboneau, except for periods where Sharboneau was temporarily promoted to an IOD Senior Inspector position. During 2017 the Plaintiff engaged in EEOC opposition activity on behalf of Sharboneau involving the recovery of electronic evidence regarding an EEOC Complaint which had been deleted through the efforts of the Western District of Texas and IOD headquarters management personnel. From late 2017 to his retirement in 2023 the Plaintiff was subject to various and severe forms of retaliation and a hostile work enviornment as substantiated in EEOC case 570-2020-01128X and as detailed in the Administrative Judges decision in favor of the Plaintiff (Complainant) (Report of Investigation (ROI) for EEOC case # 2023-000274 pages 133-178. The Plaintiff acted pro-se eventually obtaining an EEOC hearing and becoming the prevailing party in October of 2022. Of the harms visited upon the Plaintiff by the Agency, and sustained by the EEOC Administrative Court were psychological injuries; excessive scrutiny, exposure to a hostile work enviornment, harm to the Plaintiff's reputation and standing, and preventing the Plaintiff from obtaining medical care through Agency management's abuse of Agency leave restriction mechanism's (refer to Page 11 finding of fact #91 of Judge Qualtroughs decision in the same case ROI USM 2023-000274 page 145 "Complainant suffered emotional distress as a result of Nunley's retaliation and the hostile work environment. The retaliation and hostile work environment contributed to the psychological injury suffered by Complainant and caused Complainant further injury by keeping him from taking needed leave to seek medical treatment for these injuries.").

3. It wasn't until April 4th of 2022 that the Plaintiff managed to obtain medical help. Shortly thereafter the Plaintiff alleges that he was again met with illegal actions by the Agency in the form of FMLA interference and retaliation; which the Plaintiff asserts was motivated by both FMLA and EEOC retaliatory motives as detailed in paragraphs 16a through 16k pages 9-12 of the Plaintiff's Case Advocacy document to the Department of Justice (DOJ) fact finder/Complaint Adjudicating Officer (CAO). The Plaintiff in compliance with Agency policy and as a matter of public and personal safety made his diagnosis known to the Agency and was found unfit for duty in May of 2022. The Agency recovered the Plaintiff's credentials,

Agency firearms, and vehicles and the Plaintiff spent several months attempting to fully recover from the injuries visited upon him by the Agency. While the Plaintiff had made very good progress toward recovery by the time of the Plaintiff's retirement on January 7th 2023 the record shows that he was still considered by the Agency as unfit for duty based on his injuries. The Agency refused to assist the Plaintiff in filing for workers compensation claims (OWCP) and refused to extend him advanced sick leave in January of 2023.

4. The Agency refused to remove the leave restrictions which caused the aggravation of the aforementioned psychological injuries as well, despite the written objections of the Plaintiff. The Agency was eventually ordered to do so by decision of the Administrative Judge and DOJ CAO (Complaint Adjudicating Officer) in October of 2022, the Agency was given 30 days to do so. The record shows that the Agency allowed those leave restrictions to remain in effect until at least December of 2022, and to the knowledge of the Plaintiff never communicated to him that they were lifted at all necessitating an appeal to the EEOC OFO for enforcement of the original orders. The Plaintiff seperated from the Agency by retiring on January 7th 2023.

5. The Plaintiff asserts that the Agency management engaged in numerous other acts of reprisal between 2020 and the date of his retirement that further contributed to the totality of the circumstances surrounding his situation making his already aggravated and intolerable situation even more untenable.

6. These acts include damaging the Plaintiff's professional reputation and standing; exposing the Plaintiff to extreme scrutiny resulting in numerous accusations of wrongdoing and a 7 day suspension calculated to attempt to terminate the Plaintiff's employment; refusal on the part of the Agency to voluntarily mitigate any of the harms to the Plaintiff; in violation of Agency policy, refusal on the part of the Agency to make any attempts to hold managers accountable for previous sustained acts of retaliation against the Plaintiff; requesting the Plaintiff's retirement as part of an unsolicited global settlement offer after the Plaintiff was a prevailing party in an EEOC hearing (note there is a dispute between the Agency and the Plaintiff as to whether this communication is protected under rule 408); refusal on the part of the Agency to aid the Plaintiff in filing for OWCP while the Plaintiff was on sick leave; refusal on the part of the Agency to implement ordered relief to the Plaintiff as the prevailing party in an EEOC case in a timely fashion or at all.

7. The US Marshal's Service EEOC Office conducted an investigation case #2022-0006000 and 2022-000699 resulting in a single 631 page report of Investigation (ROI) bearing those same case numbers. In that Report of Investigation the EEOC Office identified 2 issues, reproduced here: "Whether Complainant was subjected to reprisal (filed prior EEO complaints)
discrimination and a hostile work environment when on May 11, 2021, he was

notified that he was the subject of an Internal Affairs investigation for Violations of Professional Responsibility for which he was ultimately issued a seven-day suspension without pay, effective January 31 to February 6, 2022. Additionally, between April 3-11, 2022, as part of his mid-year performance review, he was accused of failing to meet various performance standards for the first half of the rating period, placed on an action plan, and assigned a mentor."

8. The Plaintiff requested a hearing, the initial phases of which begun in August of 2023. The Plaintiff motioned to withdraw his complaint without prejudice and was granted the motion on September 27th of 2023. This filing is within 30 days of that date, and as such the Plaintiff has the right to file suit within such time. This action is filed within the aforementioned timeframe.

9. The individual refered to in the following causes as "Thomas Obrien" or "Obrien", are the Plaintiff's first line Supervisor, from March of 2020 to his retirement in January of 2023, Assistant Chief Inspector Thomas Obrien of the Investigative Operations Division. The individual referred to as "David Smith" "Dave Smith" or "Smith" (except where Smith is clearly referring to the Plaintiff) are referring to the Plaintiff's second line supervisor from 2020 to the Plaintiff's retirement in January of 2023 Chief Inspector David Smith of the Investigative Operations Division.

10. The term "Complainant" as used in this document may be used to refer to the Plaintiff. The Plaintiff in administrative and other EEOC filings is generally refered to as the "Complainant".

## Cause of Action 1.

11. FIRST CAUSE OF ACTION Incorportating the previous statements the Plaintiff alleges that the Defendant created a cause of action when it acted in violation of Title VII of the Civil Rights Act in retaliating against the Plaintiff, discrminating against the Plaintiff, and creating a hostile work enviornment for the Plaintiff, in response to the Plaintiffs protected EEO activity. The Plaintiff adopts the issue identified by the USMS EEOC Office as stated above and on page 3 of the ROI USM-2022-000600-000699. "Complainant was notified that he was the subject of an Internal Affairs investigation for Violations of Professional Responsibility for which he was ultimately issued a seven-day suspension without pay, effective January 31 to February 6, 2022."

12. The Plaintiff asserts that he has previously participated in both EEO processes and opposition activity between October of 2017 and present. These actions are numerous and varied and identified and detailed in the Agency Reports of Investigation (ROI's) for cases USM 2019-00734, USM 2021-00282, USM 2022-000600-000699, USM-2023-000274; and further identified and detailed in the EEOC Administrative courts "Order entering Judgement" for case 2019-000274. The Plaintiff's actions in filing and participating in such

4

complaints and hearings also constitute protected activity. The Plaintiff asserts that for purposes of this filing he is a member of a protected class.

13. The Agency exposed the Plaintiff to materially adverse actions in response to the aforementioned EEO activities. The Agency conducted an internal Affairs investigation against the Plaintiff initiated in October of 2020; including numerous and often poorly defined allegations according to documents provided by the Agency in the aforementioned ROI's and ultimately resulting is a disciplinary action and a 7 day suspension served against the Plaintiff January 31st to February 6th 2022.

14. There is a clear evidentiary connection between the Agency's investigation and subsequent suspension and a retaliatory motivation on the part of the Agency. The Agency ROI for case number USM 2022 000600-000699 contains an email provided by Thomas Obrien to EEOC Investigators on June 23rd of 2022 (page 81 ROI, see attachment). The contents of this email are a referal to the Agency Internal Affairs division by Obrien on April 18th of 2022 accusing the Plaintiff of being "AWOL", "stealing time", "fail to follow"(reproduced as written by Obrien), "innacurate false or deceptive reports or statements regarding work", "possible misuse of FMLA sick leave", "indicators of insider threat", and "conduct unbecoming/lack of professionalism". It should be noted that this Internal affairs referral is seperate from the Internal affairs referal that the plaintiff references that was initiated in October of 2020, although it repeats many of the same accusations which Obrien asserted in October of 2020. The Plaintiff wishes to note that he only became aware of this investigation in September of 2023, and that the internal affairs division and the Plaintiffs chain of command hid the existense of this investigation from the Plaintiff. The Plaintiff further wishes to assert that he disputes Obrien's statements to the Internal affairs division in the case referred to Internal Affairs on April 18 of 2022 case as well as the previous one noting that Obrien's statements are uniformly false, exaggerated, speculation, or references to past substantiated acts of retaliation against the Plaintiff by the Agency. The Plaintiff wishes to note that he has filed a seperate complaint with the EEOC regarding the Agency's actions in this April 18th 2022 referral.

15. This referal is of particular note in this filing as Obrien states (direct evidence) a retaliatory motive for referring the Complainant to the Internal affairs division. Specifically Obrien states on pages 85 and 86 of the ROI USM-000600-000699 under the section titled "conduct unbecoming/lack of professionalism":

> Additionally, he has created an employee - co-worker, and employee-manager work relationship so toxic, that I, as his supervisor, will only communicate with him in writing. He routinely highlights previously filed EEOs and claims to have Whistle Blower Protection. I interpret this as a defense to intimidate managers at any attempt to hold him accountable or supervise him. Even the most basic supervisory question about his radio or vest is responded to with, "Why are you asking?", "What do you

want to know for?", or an introductory statement about EEO's and Whistleblower Protections before he answers the question(s).

16. It's the Plaintiff's contention that this statement is indisputable evidence of not only per se retaliation on the part of Obrien but a retaliatory motive for Obrien's referral of the complainant to the Internal affairs division on both October of 2020 and April 18th of 2022, as well as evidence of retaliatory motive for any claims by the Plaintiff regarding EEOC and Whistleblower retaliation claims. Obrien's statement was written and calculated to provide evidence of wrongdoing on the part of Plaintiff that could be acted upon by the Internal affairs division. This was not an inadvertent comment. Obrien ascribes a negative 'interpretation' to the Plaintiff's motivation for filing "EEO's". The Plaintiff asserts that he has never answered a question from Obrien regarding a "radio or vest" with the statement "Why are you asking" or "What do you want to know for?" and that Obrien and the Agency in the (literally) thousands of pages of documents and testimony provided in the aforementioned ROI's can provide no reliable evidence that the Plaintiff ever responded in such fashion. The Plaintiff also asserts that Obrien and the Agency have provided no evidence in the aforementioned ROI's that the Plaintiff "routinely" highlights filed "EEO's...." and that this is an exaggeration on the part of the Agency calculated to support a retaliatory Internal affairs referral. The Plaintiff asserts that he has never made a claim of "Whistle Blower Protection" and that this is a false statement. The Plaintiff further asserts that he has only once (to his belief) referenced whistleblower laws in any communication to Obrien.

17. The Plaintiff asserts that he has on one occassion only, provided an introductory statement about "EEO's and Whistleblower Protections" before he answered questions regarding "his radio or vest" (questions regarding radio and vest are contained within the same email on pages 99 and 100 of the ROI USM- 2022-000600-000699. The Plaintiff further states the ROI's referenced above support only a single instance of this. This was done in an email exchange between Obrien and the Plaintiff on October 14th of 2020 (see attachment). The Plaintiff stated the following in writing (reference ROI USM-2022-000600-000699 page 98):

Hello Tom. This is the response you've requested. I need to preface this by stating that I believe portions of our phone conversation that preceded and are referenced in your inquiry and the content of my response represent both protected disclosures and opposition activity as defined by whistleblower and EEOC statutes.

18. Obrien himself appears to have provided this document to the EEOC investigator on June 23rd 2022 as indicated in the aforementioned ROI, as this is the only instance of such a communication as described by Obrien himself this links Obrien's retaliatory motivation to this email specifically in addition to identifying a broad based retaliatory motivation. The Complainant asserts that many of the allegations Obrien states in the aforementioned October 14th email were referenced by Obrien when he was interviewed by Internal affairs investigators in 2021 ( reference case #210054 Internal Affairs transcript of interview of Thomas Obrien). Additionally the Plaintiff asserts that he was questioned by the Internal affairs division in 2021 regarding several of the

6

matters Obrien referenced in the aforementioned email.

19. In addition to this the Plaintiff asserts that he was interviewed by 2 members of the Agency Internal affairs division on or about February of 2023. The Plaintiff was advised that he was a "witness" in complaint of an alleged violation of policy referred by the Agency EEOC office regarding retaliation on the part of Obrien and David Smith of which the Plaintiff was the victim. The Plaintiff asserts that the Internal affairs investigators were unprepared with the correct documents to conduct the interview and were unable to formulate specific questions instead asking the Plaintiff to restate the information contained within his EEOC complaint contained within ROI USM-2022-000600-000699. The Complainant referred the investigators to his original written complaint. One of the two Internal affairs investigators became argumentative and the interview was terminated after only a few minutes. The Plaintiff was never contacted again regarding this case. The Plaintiff asserts on belief that the Agency Internal affairs division and/or discipline management abused their positions and acted to protect Obrien (and vicariously the Agency) by closing the investigation against Obrien, and ignoring face value evidence of retaliation in their possession, so as to absolve him of wrongdoing despite the clear evidence of retaliatory motive communicated by Obrien himself to the Internal Affairs division on April 18th Of 2022. If true the Plaintiff asserts that this is further evidence of retaliatory motive on the part of the Agency and runs contrary to USMS policy regarding retaliation and the Agency's "zero tolerance" policy as stated on the Agency's website and elsewhere.

20. The Plaintiff asserts that based on belief and the statements and documents contained within the various ROI's referenced earlier that the Internal affairs division maintained an open investigation on the Plaintiff based on the April 18th of 2022 referral by Obrien to the day of the Plaintiff's retirement on January 7th of 2023 despite obvious written evidence of retaliatory motive as referenced earlier. If true this indicates retaliatory motive on the part of the Agency.

21. The Plaintiff also asserts that on one or more occassions Obrien reported incidents to the Internal affairs division as alleged evidence of violations of policy that were in fact Agency's responses to discovery requests or otherwise part of the hearing process and record in previous EEOC cases (EEOC case USM-2019-00734, EEOC case USM-2021-00282). The Complainant asserts that this is direct evidence of retaliation.

22. The Plaintiff further asserts that the allegations and alleged evidence Obrien provided during his interview with the Internal affairs division contained false, exaggerated, or baseless statements as evidenced on page 30, pages 32-33, pages 36-37, page 39, pages 41-44, page 46, pages 51-52, pages 55-57, page 63, page 65, page 67, pages 69-71, and pages 75-88 of the Internal Affairs transcript of the interview of Thomas Obrien (IA case #210054, as referenced in ROI USM-2022-000600-000699). The Complainant asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

23. The Plaintiff asserts that the Agency deciding official utilized one or more sustained acts of retaliation as evidence in his decision to discipline the Plaintiff. The Plaintiff asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

24. The Plaintiff asserts that the Agency deciding official relied on the statements of Thomas Obrien to the extent that they were false, exaggerated, speculative, and motivated by retaliatory animus in deciding to discipline the Plaintiff. The Plaintiff asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

25. The Plaintiff asserts on belief based upon evidence contained within the aforementioned ROI's that the Agency's internal affairs division and or discipline management treated the Plaintiff differently (disparate treatment) in comparison to similarly situated employees. The Plaintiff asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

26. The Plaintiff also asserts that there is circumstantial evidence of retaliatory motive including close temporal proximity from the date of protected activities memorialized within the aforementioned ROI's to the dates of the intitiation of the adverse action regarding exposing the Plaintiff to an Agency Internal affairs investigation and Agency disciplinary process. The Plaintiff asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

27. The Plaintiff asserts that the degree of scrutiny to which the Plaintiff was exposed in referring him to the Internal affairs division was much higher than that of other similarly situated employees and that this is evidenced in the ROI's referenced in this filing. The Plaintiff asserts this is also evidence of causal link and retaliatory motivation on the part of the Agency.

28. The Plaintiff asserts that exposure to the aforementioned investigation and subsequent disciplinary action, as well as the "toxic" working relationship that Obrien references and ascribes to the Plaintiff's "EEO's" is evidence of hostile working enviornment.

## Cause of Action 2

29. SECOND CAUSE OF ACTION Incorportating the previous statements the Plaintiff alleges that the Defendant created another cause of action when it acted, again in violation of title VII of the Civil Rights Act in retaliating against the Plaintiff, discrminating against the Plaintiff, and creating a hostile work enviornment for the Plaintiff, in response to the Plaintiffs protected EEO activity (as stated in the ROI USM 2022-000600-000699 page 4 and elsewhere) "Between April 3-11, 2022, as part of his mid-year performance review,

Complainant was accused of failing to meet various performance standards for the first half of the rating period, placed on an action plan, and assigned a mentor." The Plaintiff adopts the Agency EEOC office issue.

30. The Plaintiff asserts that the actions of the Agency are materially adverse on face value in the context of title VII.

31. The Plaintiff asserts on belief that the Agency intentionally mislabeled Obriens action as 'immediate action plan' when it is in fact an "Performance Improvement Plan" (PIP), which is of course a predecessor to termination in federal employment. The Complainant asserts that instituting a PIP as an act of retaliatory animus constitutes a hostile work enviornment.

32. The Plaintiff asserts that the direct retaliatory statements of Obrien as described previously as well as the statements of David Smith supporting Obrien's actions as contained in ROI USM 2022-000600-000699 are evidence of causal link and retaliatory animus against the Plaintiff.

33. The Plaintiff asserts that between April 3-11, of 2022 Obrien made a series of complaints against the Plaintiff, contained within to emails (reference ROI USM-2022-000600-000699 pages 47-49 508-509) and regarding the Plaintiff's mid year performance evaluation. To the extent to which Obrien's statements are intelligible (some are not) or identifiable, they almost uniformly relied on speculation, exaggeration, misrepresentation or willful misrepresentation of facts that should have been known to Obrien. Obrien also engaged in selective use of information to create negative inferences toward the Plaintiff. The Plaintiff asserts that the alleged performance deficiencies identified by Obrien and David Smith are in fact false or exaggerated and a pretext for retaliation.

34. The Plaintiff asserts that Obrien and David Smith instituted an arrest quota (over the ethical objections of the Plaintiff) requiring him to arrest 10 persons per year without regard for the relative importance of the fugitive or even their fugitive status. The Plaintiff asserts that this is unethical, inconsistent with the Plaintiffs approved performance plan, a departure from previous standards, disparate treatment in comparison to similarly situated employees and evidence of a pretext for an adverse action in fact motivated by retalitory animus.

35. The Plaintiff asserts that Obrien and David Smith altered the conditions of the Plaintiff's employment, by reducing his ability to peform many of the higher level functions of his position, forcing him to perform lesser investigative functions, while continuing to hold him accountable for performing all responsibilities when it suited their retaliatory purposes.

36. The Plaintiff asserts that Obrien and David Smith held the Plaintiff to performance standards that were fundamentally different from the performance standards that the

9

Plaintiff had been held to prior to his EEOC activity in October of 2020 and which Obrien and Smith failed to communicate to the Plaintiff prior to holding him accountable for such standards.

37. The Plaintiff asserts that there is close temporal proximity between several protected activities and the adverse action identified in this cause of action.

38. The Plaintiff asserts on belief that Obrien solicited negative information from the Plaintiffs colleagues.

### Damages

39. The Plaintiff asserts on knowledge and belief that the following individuals are responsible for retaliation and creating a hostile work enviornment for the Plaintiff. Thomas Obrien; David Smith; Other members of the IOD chain of command, and the Agency's Internal Affairs Division and discipline management group to be determined by trial to the extent that they had knowledge of and acted in furtherance of acts of retaliation against the Plaintiff or acted with willful or reckless disregard or ignorance in furtherance of retaliation against the Plaintiff or were in fact complicit in retaliating against the Complainant.

40. The Plaintiff asserts that the adverse actions visited upon him by the Agency have resulted in various harms including, emotional distress and exacerbation of psychological injuries sustained to have been inflicted upon the Complainant in the EEOC courts findings and detailed in the courts decision and order for case USM-2019-00734. The Complainant asserts that the Agencies actions have caused severe harm to his professional reputation and standing. The Complainant further asserts that the fact that the Plaintiff's professional reputation and standing were already harmed by the retaliatory actions of the Agency as sustained in the EEOC courts findings and detailed in the courts decision and order for case USM-2019-00734 further exaccerbates such harm. The Plaintiff also asserts that the Agency has previously exposed him to a hostile work enviornment as sustained in the EEOC courts findings in the aforementioned case and as such further exaccerbates the years long effects of working in such an enviornment.

41. The Plaintiff seeks monetary damages as to be proven at trial to the maximum allowable by law.

42. The Plaintiff seeks relief in the form of a finding of the Court of retaliation/hostile work enviornment against the Complainant from 2020 to the time of his retirement in 2023, and specifically naming Thomas Obrien and David Smith as responsible management officials as well as any other management officials found to be substantially responsible for acts of

retaliation by the Court.

43. The Plaintiff seeks relief in the form of expungement of all records in possession of the Agency of the Internal Affairs Investigation and referral against him, copies of such records pre and post expungement to be provided to the Plaintiff.

44. The Plaintiff seeks relief in the form of expungement of all records in the possession of the Agency of the Plaintiff's mid year and end of year performance evaluations for Fiscal year 2020 forward, copies of such records pre and post expungement to be provided to the Plaintiff.

45. The Plaintiff seeks relief in the form of a written communication to all persons who were members of the Agency's Investigative Operations Division from 2021 to January 7th 2023, whether still employed by the Agency or retired, stating that the Plaintiff was subjected to illegal acts of retaliation and a hostile work enviornment by Agency management from 2020 to his retirement in 2023 (or similar relief at the Court's discretion)

46. The Plaintiff seeks a letter (or a similar one at the discretion of the Court) addressed to the Plaintiff on Agency letterhead and signed by the Agency's Director acknowledging that the Plaintiff was subjected to illegal acts of retaliation in the form of allegations of misconduct and performance deficiencies by the Agency between 2020 and 2023, a copy of which to be included in any personnel file (both paper and electronic) which the Agency maintain's regarding the Plaintiff.

47. The Plaintiff seeks a request (or a similar one at the discretion of the Court) from the Court to the Department of Justice as follows: The Agency shall consider taking disciplinary action against the responsible management officials found to have engaged in retaliation against the Plaintiff by this Court. The Agency shall report its decision within thirty (30) calendar days and file it with the US Clerk of Court. If the Agency decides to take disciplinary action, it shall identify the actions taken. If the Agency decides not to take disciplinary action, it shall set forth the reason(s) for its decision not to impose discipline. The Court does not consider training to constitute disciplinary action.

### Pro se Plaintiffs representation to the Court

47. The Plaintiff asserts to the Court that this filing is undertaken in good faith and for legitimate legal purposes and contains allegations warranted by law and supported by evidence.

11

48. The complaint and the facts stated therein are within my knowledge and true and correct to the best of my knowledge, except such matters as stated on information and belief, and as to those I beleive them to be true and correct. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge

          Plaintiff (requests a jury trial)

          Joseph P. Smith

          7542 Adobe Dr. El Paso, TX 79915

          915-271-0763

          dated: October 26 2023



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Status Line: (866) 408-8075
Washington Direct Dial: (202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740

| | | |
|---|---|---|
| Joseph Smith, ) | | |
| Complainant, ) | EEOC No. | 570-2023-00556X |
| ) | | |
| v. ) | Agency Nos. | USM-2022-000600 |
| ) | | USM-2022-000699 |
| Merrick Brian Garland, Attorney General, ) | | |
| U.S. Department of Justice, ) | | |
| Agency. ) | Administrative Judge: Montez Sterling Cobb | |
| ) | | |
| ) | Date: September 27, 2023 | |
| ) | | |

## ORDER TO REMAND HEARING REQUEST TO AGENCY FOR ISSUANCE OF FINAL AGENCY DECISION

In this case, on September 14, 2023, Complainant submitted correspondence, where he stated the following, in part:

> "The purpose of this email is to advise all parties that it's my intention to withdraw the above referenced complaint. Unfortunately, at the moment, my circumstances are such that if I were to pursue this case, I wouldn't be able to do so to the best of my ability... My decision to withdraw this complaint is based on a lack of resources, and not on a lack of merit."

Therefore, this correspondence has been interpreted as a withdrawal of Complainant's hearing request.[1] Accordingly, because Complainant has elected a voluntarily withdrawal of his hearing request, the above-captioned hearing request is hereby **DISMISSED** and the complaint is returned to the Agency for issuance of a Final Agency Decision (FAD) based on the existing record.

**It is so ORDERED.**

*[signature]*

Montez Sterling Cobb
Administrative Judge
Telephone:   (202) 921-2804 (office)
                   (404) 583-6541 (mobile)
Facsimile:    (202) 653-6054
Email:          montez.cobb@eeoc.gov

---

[1] Complainant's correspondence regarding the withdrawal of his hearing request is properly accessible in FedSEP and/or the EEOC Public Portal.

1

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed the parties received the foregoing Order on the date it became accessible in FedSEP (Agency) and the EEOC Public Portal (Complainant).

For the Commission:
Administrative Judge

Montez Sterling Cobb

**Pruden, Danielle (USMS)**

| | |
|---|---|
| From: | OBrien, Thomas W (OCAG)(USMS) |
| Sent: | Thursday, June 23, 2022 12:22 PM |
| To: | Pruden, Danielle (USMS) |
| Subject: | FW: OPR Referral Senior Inspector Joseph Smith (1 of 3) 18 April 2022 |
| Attachments: | OPR Referral.docx; USM-535-E-Mail-Response-SMITH.pdf; SMITH-MEDICAL-MAR-22.pdf; WR Verizon MiFi and Cell Phone Usage.xlsx; 2021 performance plan self assessment.docx; FY 21 Arrest Summary Submitted by SI Smith - Verified.docx; Doctors Note One.jpg; Timesheet PP7.jpg; Sick Leave Request 30 days April 22.pdf; Doctors Note 2.jpg; SMITH - FY 2022 MID-YEAR.docx; SMITH-EMAIL-GS-DILMORE.pdf; USM-535 Operations FY21-22.pdf; OCDETF-Rcase-Zwarrant-ByBadge-FY20-Dates Only.xls; SMITH-FMLA-REquest-E-Mail.pdf; OCDETF-Rcase-Zwarrant-ByBadge-FY20.xls; SI Smith CS Reponse E-Mail.pdf; SMITH-MEDICAL-FEB-22.pdf; S044-USM11-list-FY20.pdf; S044-USM11-list-FY15-FY20.pdf; SI Smith Response E-Mail Incidents.pdf |

From: OBrien, Thomas W (OCAG)(USMS)
Sent: Monday, April 18, 2022 2:34 PM
To: Internal Affairs (USMS) <ia@usms.doj.gov>
Subject: OPR Referral Senior Inspector Joseph Smith (1 of 3) 18 April 2022

OPR Staff,

The initial referral is in Word Format titled "OPR Referral". The rest of the documents are supporting documentation for the referral. There are two more e-mails to support this referral which will be sent after this one. The subject line with be the same but indicate 2 of 3 and 3 of 3.

Thomas O'Brien
Assistant Chief Inspector
United States Marshals Service
Oragnized Crime and Gang Branch
████████ Cell

1

ROI page 81    USM 2022-000600-000699 reproduced for intial pleading

1